NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1914
_____

GERALD G. KAMAU,
                              Appellant

v.

EAST PENN MANUFACTURING COMPANY, INC.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-11-cv-5317)
District Judge:  Hon. Lawrence F. Stengel
_____

Submitted Under Third Circuit LAR 34.1(a)
March 4, 2014

Before:  McKEE, *Chief Judge*, AMBRO AND JORDAN, *Circuit Judges*.

(Filed: March 20, 2014 )
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

    Gerald Kamau appeals an order of the United States District Court for the Eastern

District of Pennsylvania granting the motion for summary judgment filed by East Penn

Manufacturing Company ("East Penn") in this employment discrimination case.  He

contends that there are genuine issues of material fact concerning his retaliation claim. There are not, and we will affirm.

## I. Background[1]

East Penn is a battery manufacturer with facilities in Berks County, Pennsylvania. Kamau began working there in 2004 and eventually became a machine operator. "On September 22, 2009, Kamau met with Jason Huey, assistant plant manager, and Tony DiBenedetto, personnel coordinator," and told them that on June 25, July 22, August 20, and September 14, 2009, someone had let the air out of one of his tires, deflating it but not causing a flat tire. (App. at A4.) He suspected that certain coworkers were involved because he had argued with one of them several months before. Huey and DiBenedetto offered Kamau the option of moving to a different parking lot, but he declined. They also spoke with Kamau's coworkers and the plant security department.

DiBenedetto notified personnel director Alison Snyder about Kamau's allegations. On September 30, Kamau met with Synder and with two other employees who worked his shift. Kamau repeated his claim that his tires lost air while parked in the East Penn parking lot and asserted that nothing was being done to stop it. Snyder told Kamau that East Penn would take steps to keep his car under surveillance and asked if he would like to transfer to a new location, and again he refused. At that meeting, Kamau also told Snyder that "supervisors in his department … were out to get him." (Appellant's Br. at 5

_____

[1] In accordance with our standard of review, *see infra* note 4, we set forth the facts in the light most favorable to Kamau, the non-moving party.

2

(citing App. at A612).)  Snyder gave Kamau her business card with her cell phone number and told him to contact her if he had any further problems.

On December 3, 2009, East Penn was served with a complaint that Kamau had filed with the Pennsylvania Human Relations Commission ("PHRC"), alleging harassment based on national origin.[2]  The PHRC complaint included allegations that a coworker's mother had questioned Kamau at a car dealership; that various coworkers had "informed the police that [he] was doing something illegal[;]" and that the police were following him.  (App. at A164.)  During a subsequent meeting, Kamau also told Snyder that "hundreds of people were following him home from work in their vehicles" and that people from work were parking by his home and spying on him.  (App. at A610.)

On December 10, 2009, perhaps during the same meeting at which Kamau told Snyder he was being followed, Snyder recommended that Kamau receive professional counseling from Concern Counseling Services ("Concern"), a provider of mental health counseling and workplace fitness evaluations.  Concern served as East Penn's Employee Assistance Program provider.[3]  Kamau declined to participate in counseling and continued with his regular work.  The timing is unclear, but at some point Snyder asked

---

[2] Kamau is Kenyan.

[3] Generally speaking, employee assistance programs "assist employees in identifying and resolving personal issues, ranging from health, marital, and financial concerns to substance abuse and emotional problems."  *Oleszko v. State Comp. Ins. Fund*, 243 F.3d 1154, 1155 (9th Cir. 2001).

for an opportunity to investigate Kamau's PHRC complaint and, according to Kamau, requested that he drop the complaint to give her more time.

On December 29, 2009, Kamau went to Mike Zentner, his immediate supervisor, and told Zentner "that on two occasions someone had broken into his [Kamau's] locker." (App. at A7.) Kamau said that he would not tell Zentner if it happened again; he would just "let [him] know on his way out of here." (*Id*. at A195.) Zenter took this as a threat, although a personnel representative who knew of the comment disagreed. That same day, personnel representatives met with Kamau to go over the locker allegations. Kamau informed them that the only item missing the first time was a towel and that he believed someone had obtained his locker combination by looking over his shoulder. They offered to move Kamau, but he refused and said "[t]hat would not solve my problems. It's like Bin-Laden. He multiplies and trouble follows him." (*Id*. at A197.)

On January 7, 2010, Kamau reported to Zentner that someone had again broken into his locker and this time had stolen a newspaper. However, during the subsequent investigation, Kamau said that the newspaper might be in his car, which is in fact where it was. Kamau then asserted that an employee may have taken the paper from his locker and placed it in his car.

On Friday, January 8, 2010, Snyder again met with Kamau and informed him that a fitness-for-duty ("FFD") evaluation at Concern was a condition of his continued employment. Snyder also offered to transfer Kamau to a new department. Kamau refused to go to Concern and indicated that he wanted to quit; however, he agreed to meet with Snyder after the weekend. On Monday, January 11, Kamau met with Snyder and

4

informed her that he would attend an FFD evaluation at Concern. Snyder explained that the evaluation would be a condition of employment, and they reviewed the necessary paperwork, including a waiver that Kamau would have to sign so that East Penn could verify Kamau's attendance and fitness for duty (the "East Penn waiver"). At the meeting, Kamau signed a preliminary form, East Penn's "Concern Employee Assistance Program (EAP) Mandate," which required him to meet with a counselor at Concern no later than January 13, 2010. (*Id*. at A207.)

By January 21, 2010, Snyder had not received confirmation from Kamau or from Concern that Kamau had been evaluated. Although Kamau attended two sessions at Concern and signed a waiver allowing Concern to obtain information from his primary doctor, he did not sign the East Penn waiver to allow Concern to confirm his attendance with East Penn. Kamau thought he had signed the East Penn waiver when he signed the waiver for his primary doctor.

Snyder met with Kamau on January 25, 2010, to have Kamau sign the East Penn waiver. Snyder showed Kamau the East Penn waiver, explained that he had not signed it, and asked him to sign it in her office. Snyder called Concern, and a manager explained to Kamau what the waiver entailed. Kamau refused to sign and said he would rather go to a local Concern office to sign the form. Kamau never did. After two attempts by Snyder to contact Kamau by phone and after confirming with Concern that the waiver had not been signed, East Penn terminated Kamau's employment on February 1, 2010.

Kamau then filed this employment discrimination action against East Penn alleging racial and national-origin discrimination and retaliation in violation of 42 U.S.C.

5

§ 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq*. On January 12, 2012, the District Court granted East Penn's partial motion to dismiss Kamau's race and national-origin claims. East Penn subsequently moved for summary judgment on Kamau's retaliation claims, and the District Court granted that motion. Kamau responded with this timely appeal. Only the District Court's summary judgment order on Kamau's retaliation claims is at issue now.

## II.    Discussion[4]

Kamau asserts that the District Court's grant of summary judgment was error because "[t]here [are] genuine issues of material fact in dispute." (Appellant's Br. at 10.) We disagree. To establish that there actually is a genuine issue of material fact, the non-moving party facing a summary judgment motion must point to evidence "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Kamau is unable to point to sufficient evidence of a factual dispute over an essential element of his case.

---

[4] The District Court had jurisdiction under 28 U.S.C. § 1331. We exercise jurisdiction pursuant to 28 U.S.C. § 1291. We review the District Court's grant of summary judgment de novo and "view inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party." *Montanez v. Thompson*, 603 F.3d 243, 248 (3d Cir. 2010). Summary judgment is appropriate where we are satisfied "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. Rule Civ. Pro. 56(c).

6

He bears the initial burden of establishing a prima facie case of retaliation. *See McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802 (1973) (establishing burden-shifting framework for Title VII claims). To establish a prima facie case, a plaintiff must show that (1) he engaged in a protected activity, (2) his employer took an adverse employment action "after or contemporaneous with the protected activity, and (3) a 'causal link' exists between the adverse action and the protected activity." *Andreoli v. Gates*, 482 F.3d 641, 649 (3d Cir. 2007). Once a prima facie case is established, the burden of going forward shifts to the defendant to establish a "legitimate, non-retaliatory reason for the adverse employment action." *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007). If the defendant is successful, the burden returns to the plaintiff to establish that the proffered reason is pretextual.[5] *Id.*

The District Court granted summary judgment to East Penn on the ground that Kamau had not established a prima facie case for retaliation or, alternatively, that he had not shown that East Penn's reasons were pretextual. Although the undisputed facts may strongly suggest that there is no prima facie case, we are at least certain that they establish that there is no pretext, and we will limit our holding accordingly.

East Penn argues that its non-retaliatory reason for the FFD evaluation was that, based on Kamau's "bizarre comments," there was cause to be concerned that he was "extremely paranoid" (Appellee's Br. at 48), and that he was terminated due to his failure

---

[5] All of Kamau's claims are subject to the same legal standard for retaliation. *Cf. Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007) (applying three-element framework to PHRA); *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001) (recognizing the same framework for retaliation claims under Title VII and § 1981).

to sign the East Penn waiver. Kamau contends that the real reason for East Penn's actions was the filing of his PHRC complaint. According to Kamau, the circumstances of other employees who were terminated for failure to sign the waiver support his contention that he was terminated solely because of the complaint. In Kamau's view, Snyder's "request that he drop the PHRC complaint so that she could investigate any further concerns" is further evidence of pretext. (Appellant's Br. at 32.)

To establish pretext, a plaintiff must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence." *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005) (internal quotation marks omitted) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)). A plaintiff must present evidence to rebut "core facts put forward by the employer as the legitimate reason for its decision." *Id*. Kamau is unable to do so.

He argues that "East Penn failed to produce evidence that would support the conclusion that Kamau was treated the same as other employees" (Appellant's Br. at 28), specifically because "none of their situations are remotely similar" (*id*. at 29). Kamau further asserts that because East Penn "is in possession of the relevant evidence, Kamau is entitled to an inference" that certain personnel files would support his claim. (*Id*. at 29.) Those arguments are unpersuasive.

As for the requirement that he attend counseling, apart from his termination, Kamau does not dispute the material facts establishing his odd behavior or the seemingly paranoid comments he made to East Penn personnel. Regarding Kamau's termination,

8

the District Court correctly noted that he presented "no evidence that East Penn ever permitted an employee who failed to comply with an EAP mandate to continue working." (App. at A20.) It is undisputed that Kamau did not sign the East Penn waiver and, thus, did not comply with East Penn's FFD evaluation requirement. In fact, the undisputed facts show that Snyder made numerous attempts to have Kamau sign the waiver form, including explaining to him that he had failed to sign it and providing the correct form for him to sign in her office.

As for Kamau's allegation that Snyder asked him to drop his PHRC complaint, taking the facts in the light most favorable to Kamau, the District Court was correct to determine that, even if she had made the request, "no jury could reasonably conclude that East Penn's nondiscriminatory reason was a pretext where the undisputed evidence indicates that Snyder exhaustingly attempted to obtain" Kamau's compliance with the steps necessary to maintain his employment. (App. at A21 (emphasis omitted).)

Kamau cannot show that there is a genuine issue of material fact from which a jury could conclude that East Penn's actions were based on anything but his disturbing behavior and his failure to comply with the FFD mandate. Therefore, the District Court was correct to hold that Kamau could not establish pretext.

III. Conclusion

For the foregoing reasons, we will affirm the District Court's grant of summary judgment.